# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

THE PERSON OF CARLOS MONCLOVA, YEAR OF BIRTH 1978

)
)
)
)
)
)

Case No.   MR 25-402

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, attached hereto and incorporated herein.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1152 | Murder in Indian Country |
| 18 U.S.C. § 1111(a) | |

The application is based on these facts:

See attached Affidavit, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Dustin Patterson
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date:   03/05/2025

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Steven C. Yarbrough, United States Magistrate Judge
_____
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** THE PERSON OF CARLOS MONCLOVA, YEAR OF BIRTH 1978 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41
FOR A WARRANT TO SEARCH AND SEIZE**

I, Dustin Patterson, Special Agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the body of CARLOS MONCLOVA (born in 1978), to collect deoxyribonucleic acid (hereinafter "DNA") samples by way of buccal swabs. MONCLOVA is currently the subject of a homicide investigation involving the murder of John Doe, an Indian, who was found shot to death on August 19, 2023. John Doe's body was found in the backseat of a blue 2017 Toyota Camry. As outlined below, I believe that MONCLOVA's DNA may be present on the gear shift, arm rest, and head rest of that vehicle.

2. CARLOS MONCLOVA (hereinafter "MONCLOVA") is currently residing at 1401 S Bluffview Avenue, Apt. 128, Farmington, New Mexico. MONCLOVA is approximately 5'0" tall, 160 pounds, with black eyes.

3. Because this affidavit is submitted for the limited purpose of seeking a search warrant to collect DNA samples from MONCLOVA, I have not set forth each and every fact I have

learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish the foundation for an order authorizing the requested search warrant.

## PURPOSE OF THE AFFIDAVIT

4.      As set forth herein, there is probable cause to believe that MONCLOVA committed a violation of Title 18, United State Code, §§ 1152 and 1111(a), Murder in Indian Country. There is also probable cause to believe that MONCLOVA's DNA will be matched with DNA samples collected from the Toyota Camry where John Doe's body was found. Therefore there is probable cause to collect a DNA sample from MONCLOVA via buccal swab in order to compare it with samples collected from the lawfully seized evidence in this case.

5.      Any observations referenced herein that I did not personally witness were related to me in oral and/or written reports by agents of the FBI, or other law enforcement agencies. All figures, times, and calculations set forth herein are approximate.

## AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

6.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since May 2017. As such, I am a law enforcement officer of the United States and I am empowered by law to conduct investigations and to make arrests for criminal offenses. My current assignment is working as a Special Agent in Farmington, New Mexico, where I primarily investigate crimes that occur in Indian Country to include homicide, drug trafficking, aggravated assault, child sexual assault, kidnapping, and rape. Since joining the FBI, I received training at the FBI Academy in Quantico, Virginia and since the academy have completed numerous in-service trainings related to federal investigations. My training and experience as a Special Agent includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects and witnesses, writing affidavits, examining cellular telephones, managing confidential

human sources, and collecting evidence.  I have received training specifically regarding the search for and collection of DNA evidence.

7.      Prior to being assigned to Farmington, New Mexico, I was a Special Agent in the Portland, Oregon field office, where I worked on the Clackamas County Interagency Task Force (CCITF).  I have participated in numerous complex drug trafficking and money laundering investigations.  I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510; that is, an officer of the United States of America who is empowered to investigate and make arrests for offenses alleged in this warrant.

## JURISDICTION

8.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.

## PROBABLE CAUSE

9.      On August 19, 2023, New Mexico State Patrol, Emergency Medical Service (EMS), and the Navajo Police Department were dispatched to an abandoned car, a blue 2017 Toyota Camry, with a possible dead body in the back seat.  The Toyota Camry was located on top of a bluff approximately one-half mile off road 371 near Farmington, New Mexico.  Upon arriving on scene, responding officers and medical personnel looked in the car and found a decomposing body in the back seat.  Responding personnel determined the location was located within the exterior boundaries of the Navajo Nation.  Officers called NDCI and the FBI whom responded to the scene.

10.     After arriving on scene and noting the degree of decomposition of the body, investigators called the Office of Medical Investigator (OMI) who responded to the scene.  While

processing the crime scene and the body, the subject was identified from an identification card and tattoos.[1]  Investigators also noted a possible bullet hole on the right side of John Doe's body.  On August 20, 2023, OMI performed an autopsy.  Preliminary medical reports show that John Doe was shot one time with a small-caliber bullet that caused fatal damage to his heart and lungs.  The final pathologic diagnosis from OMI determined that the cause of death was a gunshot wound that entered the left chest and exited the left back with a trajectory from front to back, right to left and downwards.

11.    After John Doe's body was removed from the Toyota Camry, the vehicle was secured and towed back to the FBI Farmington Field Office located at 215 W Elm. Street, Farmington, NM, where it was then stored in the secured parking lot.  The Toyota Camry was secured in the lot until the FBI Evidence Response Team was able to respond and process the vehicle for evidence.

12.    After leaving the scene where the Toyota Camry was found, investigators spoke with Witness 1 who initially reported the abandoned vehicle.  Witness 1 stated s/he uses the road where the Camry was found multiple times a day.  Witness 1 did not see the abandoned Camry until the evening of August 18, 2023.  Witness 1 believed the car belonged to someone possible working in the area.  When Witness 1 observed the vehicle in the afternoon of August 19, 2023, s/he believed the vehicle was possible stolen.  S/he decided to approach the vehicle and smelled a bad odor coming form the vehicle.  Witness 1's husband opened the back driver side door and saw the body.  Witness 1 then contacted police.

13.    After identifying John Doe, investigators located next of kin and made the death

---

1 Although the victim's identity is known to investigators, I refer to the victim as "John Doe" for purposes of this affidavit. I was able to confirm via Certificate of Indian Blood that John Doe is an enrolled member of the Navajo Nation and is thus an Indian under federal law.

notification.  John Doe's mother, Witness 2, provided the following information: John Doe was last seen by family members on August 12, 2023 in Farmington, New Mexico, at Witness 2's residence.  John Doe arrived at Witness 2's residence driving the Toyota Camry and asked his mother for approximately $10 because he needed gas.  John Doe was not acting strangely and seemed happy.  Witness 2 did not give John Doe any money.  Witness 2's husband met with John Doe a short time later and filled the Toyota Camry with gas.  John Doe is known to use the phone number 505-686-1259.  As far as Witness 2 knew, John Doe was the only one that drove the Toyota Camry.

14.    During the subsequent months, investigators spoke with other relatives and associates of John Doe.  No information was provided regarding the murder, but those interviewed stated John Doe was the only known driver of the Toyota Camry.

## Search of the Toyota Camry

15.    On August 22, 2023, the FBI Evidence Response Team (ERT) conducted a thorough search of the Toyota Camry.  During the search, ERT located a new box of .22 Magnum ammunition in a bag in the trunk of the car, a list of contacts written on a piece of paper in the center console, and an empty bottle of alcohol in the trunk.  ERT also gathered DNA swabs and fingerprinted the vehicle.  ERT did not find a gun in the vehicle.  Additionally, ERT was unable to locate any bullet holes or evidence that John Doe was killed inside the vehicle, indicating that John Doe was killed outside the vehicle and then the vehicle was used to transport John Doe's body to the location where it was ultimately found.

16.    The Toyota Camry is a "push to start" vehicle.  A "push to start" vehicle uses a keyless ignition system where you start the engine by simply pressing a button on the dashboard instead of inserting a traditional key, requiring only the key fob to be present inside the car and

usually pressing the brake pedal before pushing the start button. On August 19, 2023 when John Doe was found deceased, John Doe had the keys to the Toyota Camry in his front right pocket and the car battery was dead.

17.     Based on John Doe being found in the backseat of the Toyota Camry, investigators requested that ERT take DNA swabs from multiple locations near the driver and passenger seat of the Toyota Camry. ERT members took DNA swabs from multiple locations including the steering wheel, gear shit, door handles, and seat rests. The DNA swabs were sent to the FBI laboratory for examination.

18.     On August 16, 2024, the FBI laboratory provided their initial findings in a laboratory report. The report states, "Male DNA was obtained from items 10, 13, and 15. Items 10, 13, and 15 were each interpreted as originating from two individuals and are suitable for comparison purposes." Item 10 is listed in the report as a swab from the Toyota Camry gear shift. Item 13 is listed as a swab from the front passenger side arm rest of the Toyota Camry. Item 15 is listed as a swab from the front passenger head rest of the Toyota Camry.

19.     The report also stated the following, "Male DNA was obtained from item 16(1). Item 16(1) was interpreted as originating from three individuals, one of whom is [John Doe], and is suitable for comparison purposes." Item 16 is listed in the report as a bottle with cap from the trunk of the 2017 Toyota Camry.

**Interview of Witness 3**

20.     In May 2024, Sergeant Roe with San Juan County Detention Center called and told me one of the inmates was claiming to have information regarding a homicide that occurred on or near the reservation. Sergeant Roe arranged for me to meet with and interview the inmate. The inmate's identity is known to me but is being withheld in this affidavit. The inmate later agreed to

provide information without any guarantees or promises and was signed up as an FBI confidential human source (CHS). I will refer to the inmate as "Witness 3" in this affidavit. During the initial interview, Witness 3 provided the following information:

21.     Witness 3 previously dated a narcotics dealer in the Farmington, New Mexico area. While dating the narcotics dealer, Witness 3 was introduced to Carlos MONCLOVA. MONCLOVA and Witness 3 became friends. Witness 3 has thus known MONCLOVA for a number of years. In approximately October 2023, Witness 3 went to MONCLOVA's residence near Sycamore Park in Farmington. MONCLOVA bragged to Witness 3 and said, "I fucking blasted that youngster," though MONCLOVA did not say the name of the "youngster" and Witness 3 did not know to whom MONCLOVA was referring.

22.     MONCLOVA told Witness 3 additional details about the shooting. MONCLOVA said he was at his residence when "he" (referred to hereinafter as "UV" for "unknown victim") arrived and was yelling at MONCLOVA that "he was the plug." The UV walked up to the front door of MONCLOVA's residence and reached behind his back. As the UV reached behind his back, MONCLOVA pulled a gun and shot the victim one time somewhere in the torso. MONCLOVA told Witness 3 the UV looked down and then stumbled back towards his car. MONCLOVA immediately opened the door of UV's car and shoved him into the backseat. Witness 3 believed the car was a red or maroon sedan.

23.     After shoving the victim into the car, MONCLOVA called someone named Rick. MONCLOVA and Rick then drove up onto the bluffs near highway 371 and dumped the vehicle.

24.     Witness 3 has seen blood drops on the door of MONCLOVA's residence that Witness 3 believed were from the shooting. Witness 3 believed the blood drops are still on the door. MONCLOVA's young daughter, mother, and father all witnessed the shooting. Witness 3

was not sure the type of gun used to kill the victim, but believes MONCLOVA still has the gun but has "stashed" it somewhere.

25.     Witness 3 has a criminal history including conditional discharge for felony trafficking of controlled substances and possession of a controlled substance.  Witness 3 also has arrests for possession of drug paraphernalia, failure to appear, receiving/transferring stolen motor vehicles, abuse of a child, and aggravated assault.  However, Witness 3's statements are largely consistent with the forensic evidence recovered in the case so far.

**Interview of Witness 4**

26.     In July 2024, a former CHS for the Region II Task Force reached out to Sergeant Babadi at San Juan County Sheriff's Office and stated s/he had talked to a friend who had information on a homicide that occurred approximately one year ago near the reservation.  The CHS arranged for me and Sergeant Babadi to meet with his/her friend (hereinafter referred to as "Witness 4").  On July 9, 2024, Sergeant Babadi and I met with Witness 4. During the interview, Witness 4 provided the following information:

27.     Witness 4 recently arrived in Farmington, New Mexico.  Shortly after arriving in Farmington, Witness 4was walking near a street when an unknown male subject pulled up as asked if s/he wanted a ride.  Witness 4 got into the vehicle and learned the male's name was Carlos MONCLOVA.  MONCLOVA drove Witness 4 back to his house and gave Witness 4 some pills.  While they were "hanging out," MONCLOVA told Witness 4 he had killed someone "about 8 months ago."

28.     MONCLOVA told Witness 4 that the guy he killed was "messing with his girl" and the two had a confrontation.  At some point the guy showed up to MONCLOVA's residence and was walking toward the front door when MONCLOVA shot him one time with a "mini-AR."  After

being shot the guy stumbled back to the car and fell in the driver seat of his own car.  MONCLOVA pushed him into the car and then drove the car up to the bluffs and left it.  A friend picked up MONCLOVA and drove him home.

29.    MONCLOVA told Witness 4 he dumped the gun in the river near the bridge. MONCLOVA did not mention the name of the guy he shot.  MONCLOVA told Witness 4 police found the body about four days after the incident.  Witness 4 did not know MONCLOVA before this incident but has been to his house several times since their first meeting.

30.    Witness 4 has no known felony convictions, but has been arrested in New Mexico on shoplifting, fraud, possession of a controlled substance, forgery, trespass, receiving/transferring stolen motor vehicles, and failure to appear on felony charges.  Again, however, Witness 4's statements are consistent with forensic evidence recovered in the case so far.

31.    Investigators have not found any associations between Witness 3 and Witness 4. Investigators do not believe they know each other, and there is no indication that Witness 3 or Witness 4 have discussed the case with each other.  In interviews with the witnesses, investigators have not shared details of the homicide and there has been no known media coverage of the homicide.  MONCLOVA's description of shooting a male subject one time, shoving the subject into his own car, and then dumping the body on a bluff in the car are all consistent with how John Doe's body was found and his cause and manner of death.  I have checked with local law enforcement officers and no other known homicides matching that description have occurred in the area in that timeframe.  With MONCLOVA's two separate admissions to two different witnesses, and the forensic evidence recovered to date, I have probable cause to believe that MONCLOVA killed John Doe in Indian Country and then disposed of his body in John Doe's vehicle.

32.     Based on my experience and training, I know evidence or trace evidence such as bodily fluids (e.g., semen and saliva), skin cells, and hair – being DNA evidence – may be transferred during contact in the commission of a homicide. Such evidence usually requires observation and analysis by forensic technicians in a laboratory setting to analyze and detect. In my experience, I know DNA evidence such as saliva (usually in the form of buccal swabs) is extremely beneficial in identifying individuals and linking suspect(s) to crimes. Such DNA evidence may be matched to the suspect(s) or it may be used for elimination purposes.

33.     Based off the reports obtained by the FBI Laboratory, I am aware that male DNA, not belonging to John Doe, was left on both the driver side and passenger side of the Toyota Camry. I submit probable cause exists to search the body of MONCLOVA, to collect DNA samples by two buccal swabs, pursuant to Rule 41 of the Federal Rules of Criminal Procedure.  The DNA collected from MONCLOVA will then be analyzed and compared to the DNA taken from the Toyota Camry where John Doe's body was found.

34.     This affidavit was reviewed by Assistant United States Attorney Eliot Neal.

Respectfully submitted,

Dustin Patterson
FBI Special Agent

Subscribed electronically and sworn telephonically on March 5, 2025.

HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

## <u>ATTACHMENT A</u>

**Person to be Searched**

The person of CARLOS MONCLOVA, a male born in 1978, approximately

5'0" in height, 160 pounds, with black eyes.

## ATTACHMENT B

**Person to be Searched:**    The person of CARLOS MONCLOVA, a male born in 1978, approximately 5'0" in height, 160 pounds, with black eyes.

**Items to be seized:**

1. Collection of two (2) DNA buccal swab standards, specifically saliva fluid from MONCLOVA's person.